**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VISION WORKS IP CORP., <br><br> Plaintiff, <br><br> v. <br><br><br> NISSAN NORTH AMERICA, INC., <br><br> Defendant. | Case No. 22-cv-00301-BAS-DDL <br><br> **ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS (ECF No. 19)** |

Before the Court is Defendant's motion brought pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6) to partially dismiss this patent infringement action. (Mot., ECF No. 19.) Specifically, Defendant argues that three of Plaintiff's patents claim ineligible subject matter under 35 U.S.C. § 101 (Section 101), because they are directed to laws of nature and abstract ideas. (*Id.* at 1.) Plaintiff opposes (Opp'n, ECF No. 20), and Defendant replies (Reply, ECF No. 23). The Court held a hearing on September 28, 2022. (ECF No. 27.) Having considered the parties' filings and oral arguments, the Court **GRANTS** Defendant's partial motion to dismiss but grants Plaintiff leave to amend.

I.  BACKGROUND

   A.   **Procedural Posture**

Plaintiff, Vision Works IP Corporation, filed a patent infringement suit against Defendant, Nissan North America, Incorporated. (Compl., ECF No. 1.) Plaintiff owns five

relevant patents—U.S. Patent No. 8,315,769 ('769 patent), U.S. Patent No. 8,437,935 ('935 patent), U.S. Patent No. 8,682,558 ('558 patent), U.S. Patent No. 8,954,251 ('251 patent), and U.S. Patent No. 10,391,989 ('989 patent). (*Id.* ¶¶ 3–7.) These patents all claim inventions related to improved vehicle operations. (*Id.*)

Defendant now moves to dismiss the claims related to the '769, '558, and '989 patents, arguing that these patents are drawn to ineligible subject matter.

**B.    Patents at Issue**

At the most basic level, the three challenged patents claim a method of monitoring or controlling vehicle performance. ('769 patent, ECF No. 1-2; '558 patent, ECF No. 1-4; '989 patent, ECF No. 1-6.) Their priority date is in 2004. (Compl. ¶¶ 3–7.)

According to the Complaint, the '769 patent and the '558 patent claim "novel solutions for measuring the lateral acceleration of a vehicle and dynamically adjusting its suspension." (Compl. ¶ 9.) The patents' specifications state that these inventions improve the overall handling of the vehicle and help prevent vehicle rollovers.

Claim 21 of the '769 patent states in entirety:

> A method of controlling the performance characteristics of a vehicle, comprising: (a) sensing a lateral acceleration of the vehicle at the vehicle; (b) sending a signal to a plurality of control devices based upon the lateral acceleration of the vehicle; and (c) adjusting a suspension characteristic of the vehicle based upon the lateral acceleration of the vehicle.

In simplified terms, the patent claims a method of adjusting a vehicle's suspension when it senses lateral force (e.g., going around a bend with speed).

Claim 21 of the '558 patent states in entirety:

> A method of monitoring and controlling the performance characteristics of a vehicle, comprising: (a) sensing an absolute acceleration of the vehicle at the vehicle; (b) sending a signal to a vehicle computer unit based upon the absolute acceleration of the vehicle; and (c) operating one or more vehicle performance systems based upon the absolute acceleration of the vehicle.

In other words, the invention improves vehicle performance by sensing absolute acceleration, feeding that information to the vehicle computer, and adjusting different performance systems accordingly.

The Complaint asserts that the '989 patent "is drawn to measure a vehicle's lateral acceleration to control the vehicle speed." (Compl. ¶ 12.) Claim 9 of the '989 patent states in entirety:

> A method of monitoring a vehicle comprising: (a) detecting a lateral acceleration of the vehicle; (b) determining whether the lateral acceleration of the vehicle is greater than a threshold value; and (c) based on the heading of the vehicle and if the lateral acceleration is greater than the threshold value, reducing the speed of the vehicle.

This too claims a method of vehicle operation to prevent rollover and improve handling. It is similar to Claim 21 of the '769 patent, but instead of adjusting the suspension, the method adjusts vehicle speed.[1]

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6) Motion to Dismiss

A complaint must plead sufficient factual allegations to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In patent cases, regional circuit precedent governs procedural issues of law. *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013). In the Ninth Circuit, a motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d

---

[1] The Court analyzes only these three claims because the parties agree that they are representative. (Mot. at 7, 11, 14; ECF No. 27.) Instead of conducting separate analyses for each patent claim at issue, the Court may focus its analysis on "representative" claims. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding that the district court "correctly determined that addressing each claim of the asserted patents was unnecessary" because "all the claims are substantially similar and linked to the same abstract idea" (cleaned up)). Thus, the Court focuses on these representative claims.

729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

### B. Section 101 Subject Matter Eligibility

In general, patents enjoy a presumption of validity. 35 U.S.C. § 282(a). As a result, a defendant must establish invalidity by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). The weight of authority directs that the presumption of validity applies to Section 101 challenges. *See Tranxition, Inc. v. Lenovo (U.S.) Inc.*, 664 F. App'x 968, 972 n.1 (Fed. Cir. 2016) ("We are not persuaded that the district court was correct that a presumption of validity does not apply [to Section 101 challenges].")*. But see Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004 n.2 (Fed. Cir. 2017) ("The parties dispute whether the district court erred in requiring proof of ineligibility under § 101 by clear and convincing evidence. Because our review is de novo, and because under either standard the legal requirements for patentability are satisfied, we need not address this dispute.").

Section 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." The Supreme Court has read an inherent limitation on patent protection into Section 101: "laws of nature, natural phenomena, and abstract ideas" are not patentable. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). As such, Section 101 mitigates the risk that patent holders will monopolize the "building blocks of human ingenuity." *Alice Corp. Pty.*

*v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 85 (2012)). At the same time, courts are instructed to "tread carefully" in construing Section 101 "lest it swallow all of patent law." *Id.* at 217. Indeed, "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Mayo*, 566 U.S. at 71, and describing patents at a high level of abstraction "all but ensures that exceptions to § 101 swallow the rule," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

In striking this balance, the Supreme Court has developed a two-step test for subject matter eligibility. At step one, courts determine whether the claims at issue are "directed to" a law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217. If not, then the subject matter is patentable, and the inquiry ends there. *Id.* If the claims are directed to one of those patent-ineligible concepts, then the inquiry proceeds to the second step. At step two, courts search for an "inventive concept"—other elements or combination of elements that are "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself." *Mayo*, 566 U.S. at 72–73.

### C. Claim Construction

Courts may determine subject matter eligibility at the motion to dismiss stage. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."). In some cases, prior to deciding a motion to dismiss, a court may elect to hold a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), to construct disputed claim terms and phrases. But a full claim construction proceeding is often not necessary. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). If there are claim construction disputes at the motion to dismiss stage, the court has two options: (1) adopt the non-moving party's construction or (2) resolve the dispute "to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Id.*

## III. ANALYSIS

### A. *Mayo/Alice* Step One

Step one inquires whether the claimed invention is "directed to" ineligible subject matter. *Alice*, 573 U.S. at 217. The step one inquiry, however, implies an antecedent question: what is the claimed invention? Often, the answer is clear. But where, as here, the patent claims invite interpretation, courts must first identify the "focus" of the claimed invention.

#### 1. The Focus of the Invention

Under *Mayo/Alice* step one, courts do not consider the patent claims in a vacuum. Rather, the inquiry centers on the technological advancement over the prior art. Courts must "evaluate 'the focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter," *i.e.*, a law of nature, natural phenomenon, or abstract idea. *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) (quoting *Affinity Labs of Tex., LLC v. DIRECTTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)). The Federal Circuit has alternatively framed the analysis as understanding "the problem facing the inventor." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019).

The "focus of the claimed advance" is primarily determined by the claims themselves. *Id.* at 769 ("The breadth of the claim language here illustrates why any reliance on the specification in the § 101 analysis must always yield to the claim language."). But the specifications and background of the patent also are instructive: "While the Section 101 inquiry must focus on the language of the Asserted Claims themselves, the specification may nonetheless be useful in illuminating whether the claims are 'directed to' the identified abstract idea." *Id.* at 767 (cleaned up); *see also Enfish*, 822 F.3d at 1337 (relying on patent specifications to conduct a *Mayo/Alice* analysis). In particular, the Federal Circuit has looked to patent specifications to understand "the problem facing the inventor." *ChargePoint*, 920 F.3d at 767. Thus, the Court relies primarily on the patent claims and looks to the patent specifications for clarification.

For the purposes of a motion to dismiss, a court may adopt a plaintiff's factual allegations as to the "focus" of the claims. *Aatrix Software*, 882 F.3d at 1125. But here, as discussed below, Plaintiff has failed to make such allegations with the requisite particularity. As a result, Plaintiff does not offer a cognizable construction of the patents at issue.

In its Complaint, Plaintiff alleges that the '769 patent and the '558 patent "offer novel solutions for measuring the lateral acceleration of a vehicle and dynamically adjusting its suspension." (Compl. ¶ 9.) In its Opposition, Plaintiff further argues, "The present inventions of the '769 patent and '558 patent teach an antirollover device equipped with adjustable suspension systems, which use an absolute acceleration signal." (Opp'n at 3.) Plaintiff's Opposition continues, "When absolute lateral acceleration is detected, the accelerometer-gyroscopic sensor sends a signal to a suspension selector representing absolute lateral acceleration, which passes signals along to a device responsible for controlling the relevant suspension quadrant." (*Id.*)

None of these allegations or filings identify with specificity "the focus of the claimed advance over the prior art." *See Intellectual Ventures I*, 850 F.3d at 1338. Indeed, it is unclear what was known and used in the prior art or what problems the claimed inventions addressed. The specifications refer to an "accelerometer-gyroscope sensor" and "hydraulic or pneumatic suspension systems," which appear to have been well-known in the prior art in 2004. ('769 patent at 20.) Neither the patents nor the Complaint identify how the claimed invention improves upon those sensors or dynamic suspension mechanisms. For instance, it is not clear whether stiffening and loosening vehicle suspension existed in the prior art in 2004. The Court is left to guess whether the focus of the claim improves each of these predecessors, creates a new method of combining them, or something else entirely.

In its Opposition, Plaintiff stresses the addition of the multiple controllers in the '769 patent's claims. (Opp'n at 8.) But it is not clear whether Plaintiff is alleging the inclusion of multiple controllers as the focus of the invention or merely an aspect of the invention. Hence, the Court is unable to discern whether the plurality of controllers is the focus of the

improvement on the prior art—that is the major difference between the prior art and the claimed invention is the addition of more controllers—or, by contrast, whether the plurality of controllers is merely an aspect of a broader focus. Absent specific allegations in the Complaint, the Court is unable to adopt Plaintiff's preferred construction of the patent.

With respect to the '989 patent, the Complaint alleges Claim 9 "is drawn to measure a vehicle's lateral acceleration to control the vehicle speed." (Compl. ¶ 12.) Plaintiff further argues that the '989 patent claims a system in which "[an] accelerometer detects a lateral acceleration of the vehicle and, if a threshold value of lateral speed is exceeded, the control device sends a signal to the speed reduction circuit to reduce the traveling speed of the vehicle." (Opp'n at 3–4.)

Here too, Plaintiff has failed to identify what the advancement is over the prior art in such a way that enables the Court to adopt its construction. At oral argument, Defendant's counsel asserted that the process of sensing lateral acceleration, computing a dangerous level, and slowing the vehicle existed in the prior art. (ECF No. 27.) Indeed, Defendant's counsel suggested that the patent claims would encompass a human driver's instinct to slow a car while driving around a curve. (*Id.*) The Complaint does not contain specific allegations regarding Plaintiff's preferred construction of the patent claims outside of the vague statement that the patent is "drawn to measure a vehicle's lateral acceleration to control the vehicle speed." (Compl. ¶ 12.)

Thus, the Court construes the three patents based on the broadness of the plain language. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996))).

### 2. Directed to Ineligible Subject Matter

Step one of the *Mayo*/*Alice* test probes whether the patent claims are "directed to" a law of nature, natural phenomenon, or abstract idea. *Alice*, 573 U.S. at 217. The fundamental concern behind subject matter eligibility is preemption. Section 101 prevents

patent holders from tying up the "building blocks of human ingenuity." *Id.* at 216; *see, e.g., Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (relying on a "preemption analysis"). Put differently, "patent protection should not extend to claims that monopolize 'the basic tools of scientific and technological work.'" *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346 (Fed. Cir. 2017).

As such, courts weigh the breadth of challenged claim in a Section 101 inquiry: the broader the claim, the less likely it is to be eligible. *Compare ChargePoint*, 920 F.3d at 769 ("The breadth with which this claim is written further indicates that the claim is directed to the abstract idea of communication over a network for device interaction."), *with McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) ("The limitations in claim 1 prevent preemption of all processes for achieving automated lip-synchronization of 3-D characters.").

Here, the patents' claims are broad. The '769 patent is drawn to a high level of abstraction. Defendant points out in its Reply, "Plaintiff's broad claim language covers any means for sensing lateral acceleration, sending signals about lateral acceleration, and adjusting suspension based on lateral acceleration—thus preempting the industry's ability to employ any anti-rollover technology or adaptive suspension." (Reply at 6.) The Court agrees. And although Plaintiff argues that Defendant unfairly abstracts the claim, it fails to offer a specific narrowing construction. The '558 patent is even more broad. Instead of adjusting the vehicle suspension, the method involves "operating one or more vehicle performance systems." Lastly, the '989 patent claims a method of detecting lateral acceleration, determining whether that acceleration is above a threshold value, and reducing the speed of the vehicle accordingly. The breadth of these claims indicates that they are drawn to abstract ideas—preempting large swaths of technological advancements.

### B. *Mayo/Alice* Step Two

Having established that the claims are directed to a law of nature, natural phenomenon, or abstract idea, courts then ask, "What else is there in the claims before us?" *Mayo*, 566 U.S. at 78. "If a law of nature is not patentable, then neither is a process reciting

a law of nature, unless that process has additional features that provide practical assurance that the process is more than a drafting effort designed to monopolize the law of nature itself." *Id.* at 77. In other words, courts search for an "inventive concept." *Id.* at 72.

The Supreme Court and the Federal Circuit have provided guidelines for what counts as an "inventive concept." The inventive concept cannot be the abstract idea or law of nature itself. *See ChargePoint*, 920 F.3d at 774 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (2019))). Further, it must "do more than simply state the law of nature while adding the words 'apply it.'" *Mayo*, 566 U.S. at 72. But the inventive concept may be an individual element of the claimed invention or the "non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

When a patent lacks specifics or details, courts tend to reject any proposed "inventive concept." For instance, in *Interval Licensing LLC v. AOL, Inc.*, the patent claimed the operation of an "attention manager" that displays content in the "unused capacity" of a display. 896 F.3d 1335, 1338 (Fed. Cir. 2018). In other words, the invention was a system for organizing a computer display—helping the user view two sets of information at once. *Id.* At *Mayo*/*Alice* step two, the Federal Circuit rejected the plaintiff's proposed inventive concept because "the patent is wholly devoid of details which describe *how* [the improved user experience] is accomplished." *Id.* at 1346. The court continued, "The patent does not describe how the preexisting screen background is altered to enable the display of the second set of information, nor does it describe how the second set of information is segregated from the primary set of information." *Id.* at 1347.

Similarly, in *Free Stream Media Corp. v. Alphonso Inc.*, the Federal Circuit rejected the plaintiff's "inventive concept" because the patent implemented the abstract idea "using conventional components and functions generic to the technology." 996 F.3d 1355, 1366 (Fed. Cir. 2021). At issue was a "system providing a mobile phone user with targeted

information (i.e., advertisements) that is deemed relevant to the user based on data gathered from the user's television." *Id.* at 1358. In addition, the claims included bypassing mobile device security mechanisms. *Id.* at 1366. The Federal Circuit concluded that the claimed system and the security workaround did "nothing more than describe the abstract idea of providing targeted content to a client device." *Id.* at 1365.

Here, the claims are drawn in general terms and lack detail. For instance, the '769 patent states only that the method comprises sensing lateral acceleration, sending a signal to a plurality of control devices, and "adjust[ing] a suspension characteristic of the vehicle based upon the lateral acceleration of the vehicle." There is no indication "how" the method senses lateral acceleration, sends a signal, or adjusts the suspension. Plaintiff's Opposition argues that "the suspension adjustments" in the '769 patent, "the operation of one or more vehicle performance systems" in the '558 patent, and "the speed reduction" in the '989 patent are "inventive concepts." (Opp'n at 12.) But these elements are both abstract and conventional. As in *Interval Licensing*, the patents are "devoid of details" as to "how" the suspension is adjusted or the vehicle performance systems are operated. *See Interval Licensing*, 996 F.3d at 1366. And as in *Free Stream*, Plaintiff attempts to paint "conventional components" as "inventive concept[s]." *See Free Stream*, 996 F.3d at 1366. Thus, the claims lack inventive concepts under *Mayo/Alice* step two.

In sum, under the *Alice/Mayo* test, the patents are directed to ineligible subject matter and are therefore invalid. As such, the Complaint fails to plausibly state a claim.

## IV. CONCLUSION

The Motion to Dismiss (ECF No. 19) is **GRANTED**. The Court dismisses the Complaint with leave to amend. If Plaintiff wishes to file an Amended Complaint, it must do so by **October 31, 2022**.

**IT IS SO ORDERED.**

**DATED: October 11, 2022**

Hon. Cynthia Bashant
United States District Judge